companies as clients, and after two years it was down to 17. So I suppose I can't answer the broad question, but now So there's competition. Well, there's unfair competition. Well. And because they're not abiding the financial risk. It's not just competition. There's always competition, and everyone's happy to have competition. That's why we live in this country. But there's also, they set forth specifically an exception to the exemption, and I know that my friends on this side are relying on and pointing to the exemption. But there's an exception, and it's a broad exception for any statute-seeking financial risk where you have to abide financial responsibility laws. The state can regulate with respect to that, but you're saying that the insurance laws apply, and there seems to me that insurance versus RRG are two different animals. Insurance versus RRG, under the Federal, under the Risk Retention Act, they define insurance and RRGs as insurance companies. It's what they are. They insure, and I think that. New Jersey treats them differently. New Jersey doesn't treat them. New Jersey treats them no differently than Florida did in Mears or Wisconsin did in Arthromontic. They treat them the same way. They're responsible. There's financial responsibility laws on the books. Now, if I don't have a private right of action, and counsel and Your Honor have brought up Gatos, and they distinguish Gatos by saying there's a contract, but that's what Gatos said. After saying there was no private right of action because there was no 171711 there, because there was no private right of action, they asked the question, can you have a common law action when the violation is simply a violation of that statute? And the answer in Gatos was yes, they can. So if we demonstrate, as we have in the papers, that, for example, Ocean doesn't have the capital requirements, doesn't have the net cash available that's required by the statutes, and that's part of the record, and because of that they could operate much cheaper and provide much cheaper policies, we're damaged. So if we don't have a private cause of action, we certainly under Gatos have a common right of action. Thank you. Thank you very much. Thank you, counsel. We'll take the matter under advisement. We call our second case Hadis-Nafar v. Hollywood Tanning Systems. Thank you. Good morning, Your Honors. Good morning. Stephen Amorlovsky, Blank Rome, LLP, appearing on behalf of Appellant Hollywood Tanning Systems, Inc. We are here this morning. We reserve rebuttal time. Yes, thank you, Judge Rendell. May I reserve three minutes for rebuttal? Thank you. On September 19, 2008, this Court granted Hollywood Tan's Rule 23-F petition to review a decision by Judge Kavanaugh in the District of New Jersey certifying a nationwide class under the New Jersey Consumer Fraud Act. Our first dispute with Judge Kavanaugh is that he failed to identify the class which he was certifying and the class claims which were to be accorded class treatment in violation of Rule 23C-1B and this Court's decision in Wachtell. I think the Wachtell decision makes it clear that the District Court is required to identify the class and the class claims in a readily discernible language, that's the language from Wachtell, so that the parties are aware of what class has been certified and what class claims are going to be accorded class treatment now. Does it appear that those who might have injury claims would be included? Can we tell whether those who've been injured or might want to claim they've been injured are included in the class? Well, no, we can tell that, Judge, because in her complaint, the plaintiff expressly disclaimed any right to pursue a personal injury claim. The difficulty is that the plaintiff moved to certify the class under 23B-2 and 3 and one cannot tell from the opinion or from the order which class Judge Kavanaugh certified, nor can we tell for sure which claims asserted have been accorded. And that would have opt-out implications. That's right, exactly. Secondly, the Court failed to conduct what this Court called in its seminal decision in hydrogen peroxide, a rigorous analysis of the Rule 23 factors. With respect, Judge Kavanaugh's opinion is conclusory. There is a one-line sentence in it in which the District Court says that he, quote, carefully considered the submissions of the parties, close quote. I think hydrogen peroxide requires more. In particular, it requires the District Court to address all factual and legal disputes which are presented to it by the parties. Now of particular concern to us is the expert testimony, which the Court is required to consider and resolve and consider under hydrogen peroxide. And in this particular case, the class plaintiff, Ms. Nafar, testified at her deposition that she was unaware of the risks of indoor tanning and that had she been warned of those risks, she would not have done so. Now the survey which we presented indicated that 68% of all Hollywood Tans customers were aware of the risks associated with indoor tanning, in particular the risk of skin cancer. Seventy percent of the sample overall was aware of those risks. And there was also expert testimony presented by the plaintiff, which contradicts in some respects of the testimony that we presented. But the principal point is that the District Court did not consider this critical expert testimony and was obligated under hydrogen peroxide to do so and resolve that issue. It did not. And what is the issue, the class action issue that that is relevant to? Well, the complaint alleges that the plaintiff and presumably the class was misled by the disclosures made by Hollywood Tans about the risks associated with indoor tanning. And the testimony, the expert testimony which we presented, addresses that critical point. What Rule 23 issue is that relevant to? Well, predominance, superiority. And that leads me to my next point, Judge Stapleton, and that is the District Court failed to conduct any conflicts of law analysis, which is constitutionally mandated by this Court's decision in Georgene v. Ankem, the Supreme Court's decision in Schutz. There's recent decisions out of the Eighth Circuit. The District Court simply did not conduct a conflicts of law analysis. Well, it did make a conclusion, though, that New Jersey law protects and kind of is the best or is a good poster child, so therefore. It did, Judge. But that, I respectfully submit, is insufficient because the New Jersey Consumer Fraud Act is different in many respects from consumer fraud statutes throughout the United States. Now, at the time of the District Court's decision, I think there were 300 Hollywood Tans franchisees operating in 21 different states. And we've pointed out in our briefs the differences between the consumer protection statutes in those various states. And New Jersey Supreme Court has adopted a conflicts of law analysis, which the District Court did not follow. Instead, it relied on a District Court decision, Dal Ponte, which involves completely a New Jersey transaction. The class that was certified in that case was a class consisting of individuals who had applied for mortgages with a New Jersey mortgage company. So all the transactions in the Dal Ponte case were New Jersey transactions. Would this be different if this were common law fraud action versus New Jersey statutory? Well, interestingly enough, Judge, there was a claim in the complaint originally for a fraud which the plaintiff withdrew. But I think the same kind of analysis, the same kind of conflicts analysis would have to be conducted if the plaintiff was seeking to certify a class under common law fraud. With respect to your consideration of expert testimony and people being misled, I mean, there's class actions in the vanishing premium situation where, you know, you'll probably have, you know, a thousand possible class members, and yet you're not going to know until after they have an individualized inquiry whether any of them were actually misled or not. Don't you have the same situation here where there's a fraud or a misrepresentation claim? You can't have a threshold issue being, you know, whether class members were or were not actually misled. Well, I think that's one of the problems, and I think that's why it was absolutely necessary for the district court to consider the expert testimony which we presented. Now, there's no evidence in the district court's memorandum opinion or order that it considered any of the expert testimony, either that presented by the plaintiff or by Hollywood Tams. And so the mere reliance on the Del Ponte case, which I submit is distinguishable from this case because it involved a solely New Jersey transaction, requires that the district court's decision be vacated and that the district court be required to conduct an analysis of the Rule 23 factors in accordance with hydrogen peroxide. One other point, as I noted earlier, the plaintiff in this case expressly disclaimed that she, or disavowed any pursuit of a claim for personal injuries, and we had argued to the district court that that made her an inadequate plaintiff because of the dangers of claim splitting and preclusion of claims if the class were certified. And indeed, there's a significant body of case law which suggests that to be the case. One of the cases, one of the more recent cases and more well-reasoned opinions, comes out of the Texas Supreme Court applying Texas law, which also requires a rigorous analysis. And in any event, the district court did not consider that. Now, I think that's also critical in a case which is based on the health risks of skin cancer where the plaintiff herself is not pursuing any claim for personal injuries. And I think that if such a class were to be certified, and we respectfully submit it should not be certified, that there would be dangers of claim preclusion for members of the class who may have, you know, may in theory have claimed, have suffered some sort of personal injury. There again, I guess the state law would have implications with the, what is it, total controversy rule? The entire controversy rule. New Jersey's, quote, entire controversy rule, close quote. That issue itself would be adjudicated, would wind up the claim splitting, race judicata issue would wind up being decided by a myriad of courts applying a myriad of race judicata law, right? That's correct, Your Honor. It would depend on the law of each particular jurisdiction in which the plaintiff brought the claim or the law of the jurisdiction in which that particular class member lived or was a citizen. And I guess all the briefing having to do with causation, reliance, and how that's viewed, if we had different state laws, we could have different burdens with respect to that. That's correct, Your Honor, because under New Jersey's Consumer Fraud Act, a plaintiff must prove an ascertainable loss and must demonstrate some causal nexus between the ascertainable loss and the alleged violation of the Consumer Fraud Act, and that in itself introduces a whole host of individual issues into the case. Unless the court has any further questions, I reserve the balance of my time. Just hydrogen peroxide had been decided by this court before Judge Kavanaugh's ruling? No. I believe it was decided in December. Hydrogen peroxide, I believe, was decided in December of 2008. Judge Kavanaugh's decision was decided, I think, in August of 2008. However, even in hydrogen peroxide, where the district court did not have the benefit of the hydrogen peroxide decision, this court vacated and remanded for proceedings consistent with hydrogen peroxide. Thank you. All right. We'll hear from you on rebuttal. Good morning, Your Honors. May it please the Court. My name is Jeff Carton. I represent the nationwide class that was certified by Judge Kavanaugh last summer. What is the class? Where do we find it? The class, Your Honor, is the class on whose behalf Ms. Nafar moved, and that would be all Hollywood Tanning customers. Where is it in the record? It would be in the record. It would be in our motion papers, in our notice of motion, and I believe it would be in our complaint. But where, I mean, where do we have a statement by the court, this is the class because that's what hydrogen peroxide said we have to have? I believe in all likelihood we would have had it had we had an opportunity to prepare the notice that would have gone to the class. Obviously the notice that would be prepared to go to the class notifying them of the input asked to, together with my office, would have ultimately been submitted to Judge Kavanaugh for his approval. So is this matter not ripe because we do not have yet the order of the court that gives the imprimatur to the class definition? That is an interesting question, Judge Rendell, not one that we've briefed. I believe that we've operated on the presumption that the class we sought to certify was readily identifiable from our papers and I believe can be identified from Judge Kavanaugh's order. Is there a specific statement in either his order or opinion which identifies the class? No. I think the record is absent in that regard. So perhaps the appeal may not be ripe in terms of had Hollywood Tans gone back to Judge Kavanaugh seeking some type of order or paper that would then create ripeness for this appeal to have been pursued. In any event, I do believe that that issue could have amply been tackled at the time that notice would have been prepared amongst Mr. Orlovsky and my firm for purposes of disseminating or publishing notice to the class. Well, does it include people who have been injured as a result of the tanning? No, it should not. It should not? It should not. In fact, Ms. Nafar specifically disclaimed any attempt to pursue a claim for personal injuries on her behalf. In fact, had she, I anticipate there would have been a motion to dismiss for failure for lack of standing. Had Ms. Nafar sought to pursue claims either individually or in a representative capacity, Blank Roam certainly would have said she doesn't have standing to pursue that claim because that's not yet ripe. But then the people who were injured might later be barred under the entire controversy. No, because I think we can do that with the notice that goes out that specifically sets forth the claims. The Supreme Court has said the issue preclusion that would potentially bar a future litigant would only be as to matters that were actually litigated in this case. We would not be litigating in this case on a class-wide basis personal injury, negligence, issues of causation of the actual medicine, of the actual science that may or may not support the development of skin cancer as a result of the exposure. This is a consumer fraud case, and it's a remarkably simple case. I'm sorry, Judge Stapleton, did you have a question? Are you telling us that the class described in your client's motion for class certification excluded people who had personal injuries? Yes. We've never asserted a claim on behalf of members of the class who may have suffered personal injuries. We're unaware of any. None have been brought to our attention. There has been some publicity that has arisen as a result of the suit, but we have not been contacted by anyone who has said, I have suffered a personal injury as a result of my Hollywood Tins experience. What we're seeking, obviously, to challenge, and we believe we will challenge successfully at trial, is the omissions in the first instance, and then in the second instance, the affirmative misrepresentations that are being made. And what's unique about this case, and while I would submit in my nearly 20 years of practice in the class action arena, there are few, if any, cases that have the commonality that this case does. For instance, the conflict of law analysis, which counsel urged both Judge Kavanaugh and again urges this court to somehow consider, really ignores altogether that if we were representing solely a tanner in Topeka, Kansas, this is still uniquely a New Jersey transaction. That tanner steps into a tanning booth that was manufactured in the state of New Jersey. But it's a consumer fraud claim, and don't you think that different courts and different states are going to look upon this differently in terms of protecting their citizens from actions such as this? I don't know how you can categorically say, you know, wave a wand and it's New Jersey. Did the court reach, did the court say what you're saying? That is, did Judge Kavanaugh say, you know what, I've looked at this and no other state has any interest or any conflict of laws analysis that would make that state's law regarding consumer fraud applicable instead of New Jersey law? Judge Rundell, I believe it's a fair inference to be drawn from Judge Kavanaugh's decision, given the briefing that was done. Well, what did he say? He said New Jersey protects as well as anywhere else. He does, and the judge also said that New Jersey has perhaps the greatest interest in the case. Does the appendix contain reference to laws of other states that would be implicated here for him to have considered that? There was a submission by Hollywood Tans Beneath in terms of various state tanning statutes, none of which really go beyond or eclipse the federal regulations that otherwise govern Hollywood Tans. No, I mean consumer fraud statutes. I don't believe the lower court's decision necessarily addressed any differences that may exist. But again, I would suggest that none of those differences are relevant to the case. New Jersey has one of the strongest consumer fraud statutes in the country, and when you look at the predominance of New Jersey contacts and interests, the label is created here in New Jersey. The scripts, which every salon attendant reads from, the frequently answered questions that are provided, are all drafted, created, disseminated, published, originate here in the state of New Jersey. By virtue of the fact that New Jersey has the strongest consumer fraud, that means New Jersey cares a lot about the consumer. There may be other states where the fraud statute is weaker because they care more about businesses operating in their state. I think it's difficult to say that the New Jersey interest is necessarily the interest that prevails everywhere. I would respectfully disagree for one reason, Your Honor. Every one of those franchises in each of the 21 states has a clause in that franchise or franchisee contract that says New Jersey law applies. If I'm a small business owner in Ohio, in California, in Texas, and I decide to open a franchise, I am effectively foregoing as a business whatever rights I might otherwise have under my own state law, and I'm subscribing to New Jersey law. Why should it be any different for the consumer who then walks in and, in effect, is misled? How can it be any different? The consumer receives the alleged misrepresentation. Or omission. Pardon me? Or omission, Your Honor. In his or her state and relies on it there and suffers injury, allegedly, there. Now, how can you say it's a solely New Jersey transaction when somebody in Washington State walks into a salon, receives a misrepresentation or a misleading omission in Washington, relies on it in Washington, and then is injured in Washington? You don't think Washington would say, We've got pretty good interest in applying Washington law to see that this Washington State resident is treated justly. There certainly is some superficial appeal to Judge Stapleton's comments. But I would suggest that when we go beyond the surface and we look as to how that service was put into the stream of commerce, when we look at to where those omissions, where those misrepresentations emanated from, by whom they were made, where they were published from, when we look at the manner in which this business is conducted, as tightly and as uniformly as it is, it might actually be a jump ball. Okay, but the fact that it's a jump ball, you can't make the assumption that it goes one side or the other, can you? And that Washington State would say, Oh, of course, New Jersey law is just fine. Well, I think you can when the case has been brought, as it was in New Jersey, in the home state in which the defendant's operations are headquartered. Well, then that would mean that every case that's brought in the home state of a defendant business where there are plaintiffs who've been injured, that we're caring more about the defendant's home state than the plaintiffs. And that doesn't square. Quite frankly, oftentimes that's the case. As Judge Allarkin would be familiar, California, the Ninth Circuit, has repeatedly expressed that the Ninth Circuit will apply California's laws on a nationwide basis when the defendant's operations are principally or primarily headquartered within that state. New Jersey is of a like mind. But shouldn't we let the district court reach that conclusion through an analysis that comports with conflict and choice of law as compared to saying, you know, New Jersey has a strong law, so that's fine. I would respectfully submit that it would elevate form over substance. Given the New Jersey Supreme Court's most recent pronouncement that its conflict of laws test is to look to the state with the most significant relationship, it simply cannot be argued credibly that there is another state within the 50 states who would have a more significant relationship to the manner in which Hollywood Tans does its business than the state of New Jersey. Has the New Jersey Supreme Court in conflict of law issues referred to, say, we're following the restatement? The most recent pronouncement is they say the most significant relationship. Yes. And they refer to Section 148 of the restatement, right? I believe. No reason to disagree, Your Honor. Section 148 of the restatement says when the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of that state determines the rights and liabilities of the parties. It does say unless, but I don't think that unless is. Are you prepared to address 148? That I'm not, Your Honor. Okay. But I would submit that if Judge Kavanaugh had gone through the full explication that Blancro emerges this court to require him to do, the outcome will be no different. The outcome will be that New Jersey is the state with the greatest context, the most significant relationship. But wasn't he required to set forth that analysis and to explain why New Jersey has the most significant interest in this case? Well, he didn't have the benefit of hydrogen peroxide, of course, at the time his decision was issued. And I do believe that he had the briefing available to him, which he certainly studied and considered fully, and then issued his decision and did make the remarks that he did regarding New Jersey's relationship. But he made the conclusion without an analysis to support it. I understand Judge Allikin's concern in that regard. Okay. You've indicated earlier that we may not have an appealable order because it's not ripe on the other ground. That's correct. Is it also not ripe on this ground? I suppose the reasoning would apply with equal logic. The appeal may not be ripe to the extent that that conflict of law analysis need to be set forth fully in his decision. Again, I would submit that it need not be set forth, given that it was briefed, it was studied, and the judge made the conclusions that he did regarding New Jersey's interest. Procedurally, how one would cure that alleged ripeness, I'm not quite sure what the remedy would be in that respect. Do you want to comment on the res judicata claim splitting? I do only to the extent that I otherwise have, which is there can't be claim splitting, in my humble opinion, given that Ms. Nafar didn't have a personal injury claim to split from her allegation of consumer fraud. I think the Supreme Court's pronouncements are really clear in this respect, that it's only those issues that are actually litigated that would give rise to any preclusive effect in the future. I would also respect that. Do you think that the law of res judicata in the 50 states says that res judicata only applies to issues that were actually litigated? I believe that if we follow the Supreme Court, the highest court of the country's pronouncement, that is the test that should be applied. But I don't think that's for this panel or, in fact, Judge Kavanaugh to take up. The issue of collateral estoppel res judicata would only be brought at some point in the future by some future litigant who Hollywood tans would seek to estoppel. That's a problem. I believe respectfully we can address that when we fashion the notice that goes out to the class. And I believe that the notice will do as much as anything, perhaps even more than Judge Kavanaugh's opinion and order, in terms of setting forth for prospective class members those claims that fall within and those claims that perhaps fall without the ambit of the nationwide certification. I would have no interest. In fact, to the contrary, I would have an interest in specifically carving out personal injury claims from the notice that would go to class members to ensure that very point. I would imagine Hollywood tans should have a similar interest, so as to avoid having to litigate on res judicata collateral estoppel grounds at some point in the future the potential preclusive effect of this nationwide class certification. I would close simply by reminding your honors of the abundance of commonality that exists in this case. We're not at that stage quite yet, although we hope to be shortly, where we're actually litigating the merits of the case. But obviously, to the extent that the merits are intertwined here, we have demonstrated, and I believe Judge Kavanaugh amply exercised the discretion that should be afforded to him, the predominance of common issues that can be tried on a class-wide basis. Mr. Orlovsky has said much about the alleged common knowledge that he believes pervades class members' understanding and awareness. But I think there's a similarly commonly held pervasive understanding, as our survey evidence revealed, that customers would change their behavior. They would alter their consumption decisions if informed of that which Hollywood tans affirmatively chooses not to inform them by misbranding labels, by having scripts that pronounce a safe way to tan without sufficiently identifying the health risks that are associated with indoor tanning. Thank you very much. Thank you. Very briefly, your honors, ripeness is not an issue in this case. This appeal is ripe. The failure of Judge Kavanaugh to identify the class and the class claims in his memorandum and his order is not cured by a subsequently drafted notice to the class. It's a violation of Rule 23. Exactly, your honor. It's a violation of Rule 23, and it's a violation of this Court's decision in Wachtell. With respect to the conflict of law issue, which is constitutionally mandated, Mr. Carton seems to overlook that fact. I invite the Court's attention to a recent decision of the New Jersey Superior Court Appellate Division called BEGAL, B-E-G-A-L, v. Park West Gallery, which is cited in our brief and appears at 394 New Jersey Super 98. That case also involved a New Jersey consumer fraud class action, and in that case the appellate division noted, in multi-state class actions variations in state law may swamp common issues and defeat predominance. When considering a nationwide class, a major concern in the predominance determination is which state's law should apply to each member of the class. That is exactly the point, and that is what Judge Kavanaugh failed to do. The district court must conduct a conflicts of law analysis. It did not do so in this case, and unless the Court has any further questions, we urge the Court to vacate the district court's judgment and remand for further proceedings consistent with hydrogen peroxide. Thank you. Thank you, counsel. Thank you very much. The case is well argued. We'll take it under advisement. Thank you.